## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL SAMANTA, | ) | |
| | ) | |
| Petitioner, | ) | 12-cv-6423 |
| | ) | |
| v. | ) | Judge John Z. Lee |
| | ) | |
| TARRY WILLIAMS, Warden, | ) | |
| Stateville Correctional Center,[1] | ) | |
| | ) | |
| Respondent. | ) | |

### MEMORANDUM OPINION AND ORDER

Petitioner Michael Samanta ("Samanta") has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), challenging his state criminal conviction for first degree murder. Samanta advances several grounds for habeas relief: violations of the Fourth Amendment related to his arrest and various statements; *Brady* violations based on the prosecution's failure to disclose portions of a police report; and various ineffective assistance of trial counsel claims. Tarry Williams ("Respondent"), Warden of the Stateville Correctional Center, argues that Samanta's claims are non-cognizable, procedurally defaulted, or meritless. For the reasons set forth herein, the Court agrees and denies the petition.

---

[1]     The Court substitutes Tarry Williams for the original named Defendant, Richard Young. Rule 2(a) of the rules governing Section 2254 habeas cases provides that the proper party respondent brought by a incarcerated petitioner is the state officer having custody of the petitioner. *See Bridges v. Chambers*, 425 F.3d 1048, 1049 (7th Cir. 2005). Tarry Williams replaced Marcus Hardy as Warden of Stateville Correctional Center. Accordingly, the Court substitutes him as respondent pursuant to Federal Rule of Civil Procedure 25(d).

**Factual Background[2]**

On July 28, 2001, Michael Samanta was driving his car around with Francisco Romero when Romero got out the car and shot and killed 12-year-old Francisco Macias, who was standing in a group of people in front of a residence. *See* Resp't's Answer, Ex. A, *People v. Samanta*, 1-06-3361, 3 (Ill. App. Ct. 2006). Witnesses to the shooting stated there was only one offender. *See id.* Police created a composite sketch and, following a tip from an anonymous caller, arrested Romero. *See id.* The police also relied on an undercover informant, Fabian Gomez, a former Latin Saints street gang member. *See id.* In addition to alerting the police to Romero's involvement, Gomez also provided them with information concerning Samanta's role in one incident. *See id.* at 4. Gomez informed the police that Samanta's older brother had told him that Samanta had driven Romero to and from the shooting and the gun used in the shooting was still in Samanta's car. *See id.*

Based on this information, the police obtained authorization to outfit Gomez with an eavesdropping device. *See id.* Gomez went to Samanta's house, ostensibly to purchase drugs, and recorded a conversation wherein Samanta talked about the shooting and joked about how scared Romero was during the event. *See id.* After his arrest, Officer Thomas Cepeda, Jr. and State's Attorney Jeffery Neslund used the taped conversation to extract a confession from Samanta wherein he admitted

---

[2]     Pursuant to 28 U.S.C. § 2254(e)(1), the state courts' recitations of fact are presumptively correct in habeas proceedings. *See Sumner v. Mata*, 449 U.S. 539, 547 (1981). Because Samanta has not attempted to rebut the presumption with clear and convincing evidence, *see* 28 U.S.C. § 2254(e)(1), the Court adopts the factual account as provided in *People v. Samanta*, 1-06-3361, slip. op at 2–5 (Ill. App. Ct. 2006)

that they saw members of the rival Latin Souls street gang, and Romero took Samanta's .380 caliber handgun to shoot Macias. *See id.* at 4–5. The jury heard this testimony as well as Gomez's taped conversation with Samanta. *See id.*

During the trial, Samanta also filed a motion for a mistrial based on a missing paragraph from Neslund's summary report. *See id.* at 5. The trial court denied the motion because the same missing information had been available to Samanta through Officer Cepeda's police report. *See id.* The trial court did recess for four days, however, to give Samanta time to review the material and determine if he wanted to make any other motions or pursue other legal courses of action. *See id.* After the recess, the jury returned a verdict of guilty on the first degree murder charge. *See id.* Samanta's motion for a new trial was denied, and Samanta was sentenced to twenty-five years imprisonment. *See id.*

### Pretrial Motions

Samanta filed a number of pretrial motions that are also relevant to his habeas claims. Prior to the trial, Samanta moved to quash his arrest and suppress evidence. First, Samanta alleged that Gomez was an unreliable informant and the eavesdropping device worn by Gomez (and information extracted from it) was therefore improper. *See id.* at 2. Samanta further argued that the police had gathered evidence after his arrest from an illegal search of his house and car for which they lacked consent. *See id.* at 2–3. Lastly, Samanta argued that the statements he made to police officers after his arrest should be suppressed because

the police obtained them using false premises and in violation of his *Miranda* rights. *See id.* at 2.

The State agreed not to use the items gathered from Samanta's home and car. *See id.* The trial court heard argument on the remaining two contentions. After hearing Neslund and Officer Cepeda testify concerning their interview of Samanta at the police station, and after playing Gomez's undercover tape, the trial court found that there was probable cause to arrest Samanta based on Gomez's statements and the tape and denied Samanta's motion to quash. *See id.* at 3. The trial court also denied Samanta's motion to suppress the statements he made to the officers. *See id.* The trial court further denied the motion to suppress the statements on Gomez's tape, finding that Gomez was a reliable informant based on his affidavit that he had submitted to police. *See id.*

## Direct Appeal

On direct appeal, Samanta raised five arguments: (1) the trial court violated his Fourth Amendment rights when it authorized the police to use an eavesdropping device to record him; (2) his arrest was without warrant, probable cause, or exigency; (3) the State violated his right to a fair trial when it failed to disclose the entirety of Neslund's report of Samanta's custodial statement; (4) the trial court erred by failing to give his requested instructions on knowledge and intent to the jury; and (5) there was insufficient evidence to convict him. *See* Resp't's Answer, Ex. B, Opening Brief for Defendant-Appellant, *People v. Samanta*, No. 1-06-3361, I–IC. The Illinois appellate court denied Samanta's arguments and

4

affirmed his sentence. *See generally id.*, Ex. A, *People v. Samanta*, No. 1-06-3361 (Ill. App. Ct. 2006). Samanta then filed a petition for leave to appeal ("PLA") with the Illinois Supreme Court, raising the first four claims he raised in the Illinois appellate court but omitting his sufficiency-of-the-evidence claim. *See* Resp't's Answer, Ex. E, Defendant-Appellant's Direct Appeal PLA, 4–6. The Illinois Supreme Court denied the PLA. *See id.*, Ex. F, Order Denying PLA, *People v. Samanta*, No. 106058 (Ill. 2008).

### Post-Conviction Appeal

Samanta then filed a *pro se* post-conviction petition alleging that his trial counsel was ineffective for failing to: (1) interview, investigate, and call as witnesses Samanta's brother and his codefendant Romero; (2) move to suppress Samanta's statements to Neslund and Officer Cepeda; (3) present any witnesses in Samanta's defense or render any defense at all; (4) determine that Neslund's felony review notes produced during discovery were incomplete; and (5) conceding the legality of Samanta's arrest. *See* Resp't's Answer, Ex. L, Order Denying Postconviction Appeal, *People v. Samanta*, No. 02 CR 6639 (Cir. Ct. Cook Cnty). The trial court dismissed Samanta's petition as frivolous and without merit. *See id.* at 9.

Samanta only appealed the issue of his trial counsel's failure to investigate or interview his brother or call him as a witness. *See id.*, Ex. H, Pet'r's Postconviction Appeal Opening Brief, *People v. Samanta*, No. 1-09-0589, 14. The Illinois appellate court found that Samanta had forfeited this claim because he had not raised it on direct appeal. *See id.*, Ex. G, Postconviction Appeal Order, *People v. Samanta*, No.

1-09-0589 (Ill. App. Ct. 2010). In his subsequent PLA to the Illinois Supreme Court, Samanta again limited his claim to the argument that trial counsel was ineffective for failing to interview, investigate, or call his brother as a witness. *See id.*, Ex. N, Postconviction Appeal PLA, *People v. Samanta*, No. 1-09-0589, 11–13. The Illinois Supreme Court denied Samanta's post-conviction PLA. *See id.*, Ex. M, Order Denying Postconviction Appeal PLA, *People v. Samanta*, No. 111515 (Ill. 2011).

## Federal Habeas Claims

Samanta initially filed his federal habeas petition in the United States District Court for the Southern District of Illinois. *See generally* Pet'r's Pet. 1. The petition was subsequently transferred to this Court. *See* 8/9/12 Order Transferring Case. Samanta raises four claims in his habeas petition:

**Claim One:** The police arrested Samanta without a warrant or probable cause in violation of the Fourth Amendment.

**Claim Two:** The conversation between himself and Gomez should have been suppressed because it was recorded in violation of the Fourth Amendment.

**Claim Three:** The State failed to disclose prior to trial a statement made by Samanta while in custody violating his due process rights and *Brady v. Maryland*, 323 U.S. 83 (1963).

**Claim Four:** Trial counsel rendered ineffective assistance for failing to: (a) move to suppress petitioner's statements to police; (b) question petitioner's brother and call him as a witness at trial; (c) challenge the legality of petitioner's arrest; and (d) determine that the State's pre-trial discovery was incomplete.

## Analysis

### A.  Claims One and Two

Samanta's first and second claims are grounded in Fourth Amendment arguments already rejected by the state courts and thus are not cognizable.  "[A] petitioner cannot obtain collateral relief on a Fourth Amendment claim unless the state courts deprived him of a full and fair opportunity to litigate the claim." *Watson v. Hulick*, 481 F.3d 537, 541 (7th Cir. 2007) (citing *Stone v. Powell*, 428 U.S. 465, 481–82 (1976)).  "A petitioner has had the benefit of such an opportunity so long as (1) he clearly apprised the state court of his Fourth Amendment claim along with the factual basis for that claim, (2) the state court carefully and thoroughly analyzed the facts, and (3) the court applied the proper constitutional case law to those facts." *See Miranda v. Leibach*, 394 F.3d 984, 997 (7th Cir. 2005).  "The full and fair hearing requirement applies not only at the trial-court level in state court but also on direct review of the petitioner's conviction." *Id.*

The state court gave Samanta a full and fair hearing on his Fourth Amendment claims.  Samanta was given an opportunity to file briefs and lodge arguments in support of his motions.  *See* Resp't's Answer, Ex. O, C-33–C-34 (Motion to Quash Arrest); C-48–C-57 (Brief in Support of Motion to Suppress).  The trial court conducted a hearing and heard argument on both the motion to quash arrest and the motion to suppress the statements Samanta gave to Neslund and Officer Cepeda.  The trial court, after hearing arguments, then rendered its rulings. *See* Resp't's Answer, Ex. P, A-3–A-28 (hearing transcript).  Likewise, Samanta

7

presented his arguments to the Illinois appellate court on direct appeal and in his PLA. The Illinois appellate court carefully examined Samanta's arguments under applicable Supreme Court precedent and rendered its decision. *See* Resp't's Answer, Ex. G, 5–8 (Claim One); 9–11 (Claim Two). Consequently, Samanta's Fourth Amendment arguments cannot be raised here.

## B.    Claim Three

Samanta's third claim is that the trial court erred in not granting his motion for a mistrial based on the State's failure to disclose a portion of Neslund's report recounting Samanta's interview at the police station. Samanta procedurally defaulted this claim because he did not fully and fairly present it to the state courts. "Before a federal court can entertain a petition for habeas corpus, a state prisoner must exhaust her state remedies, presenting her claims fully and fairly to the state courts." *Howard v. O'Sullivan*, 185 F.3d 721, 725 (7th Cir. 1999). "This requirement recognizes the state courts' duty to enforce federal law and ensures that they have had a meaningful opportunity to correct federal constitutional violations." *Id.* "A petitioner presents her claims fully simply by pursuing all available avenues of relief provided by the state before turning to the federal courts." *Id.* "Fair presentment, on the other hand, requires the petitioner to have given the state courts a meaningful opportunity to pass upon the substance of the claims she later presses in federal court." *Id.*

Here, Samanta did not fairly present his federal constitutional claim in state court. The inquiry here "focuses on whether the petitioner has offered the operative

facts and controlling legal principles of his claim to the state courts." *Lieberman v. Thomas*, 505 F.3d 665, 670 (7th Cir. 2007). One inquiry is whether the petitioner "cited either federal cases that employed constitutional analysis or state cases that applied a constitutional analysis to a set of similar facts." *See id.* Courts "must also inquire into whether the petitioner has framed his claim in the state proceedings in a way that brings to mind a specific constitutional right, and whether he has alleged a set of facts 'well within the mainstream of constitutional litigation.'" *Id.* (quoting *Wilson v. Briley,* 243 F.3d 325, 327 (7th Cir. 2001)).

Samanta's initial brief on direct appeal cites only Illinois Supreme Court Rule 412(a)(ii) and argues that the State's late disclosure violated this rule, and in particular, that the trial court's chosen sanction was too minimal in light of the violation. *See* Resp't's Answer, Ex B, 18–19. Samanta cites *People v. DeBord*, 377 N.E.2d 1308, 1309–11 (Ill. App. Ct. 1978), but this case only cites to other state court cases and discusses Rule 412(a)(ii). Samanta also cites three state court cases for the proposition that a more definitive sanction, such as a mistrial, was warranted. *See People v. Allen*, 650 N.E.2d 250, 254–55 (Ill. App. Ct. 1995); *People v. Abendroth*, 367 N.E.2d 571, 574–74 (Ill. App. Ct. 1977); *People v. Davis*, 473 N.E.2d 387, 394–95 (1984). Two of these cases, *Allen* and *Davis*, only discuss state law.

The third case, *Abendroth*, does contain a citation to *Brady v. Maryland*, 373 U.S. 83 (1963). But this single citation is not enough to alert the Illinois appellate courts to the contours and outlines of a federal constitutional claim under *Brady*.[3]

---

[3]    Even if the Court were to hold that Samanta had presented a set of facts and claim well-within the constitutional frame of a claim under *Brady*, such a claim would be

9

Nor are the passing references to "due process" and a right to a fair trial in Samanta's direct appeal brief and PLA enough to alert the state courts to the federal nature of Samanta's claims. *See Riggins v. McGinnis*, 50 F.3d 492, 494 (7th Cir. 1995) ("It is not enough to scatter the words 'due process' in a brief . . . . 'Due process' is such a ductile concept that phrase-dropping is the equivalent of no argument at all."). "A mere 'passing reference' to a constitutional issue certainly does not suffice." *Chambers v. McCaughtry*, 264 F.3d 732, 738 (7th Cir. 2001). Indeed, the Illinois appellate court only relied on state law cases and Rule 412(a)(ii) in its analysis of Samanta's claim regarding the late disclosure. *See* Resp't's Answer, Ex. A, 11–12. In light of the above, Claim Three is procedurally defaulted, and the Court will not reach the merits.

### C.     Claim Four

Samanta's ineffective assistance claim has four subclaims. Samanta argues that trial counsel rendered ineffective assistance by failing to: (a) move to suppress petitioner's statements to police; (b) question petitioner's brother and call him as a witness at trial; (c) challenge the legality of petitioner's arrest; and (d) determine that the State's pretrial discovery was incomplete. These claims too are procedurally defaulted.

---

baseless. "[T]o establish a valid *Brady* claim, a petitioner must show that the prosecution suppressed the evidence, that the evidence was favorable to the defense, and that the evidence was material to the case." *Mahaffey v. Schomig*, 294 F.3d 907, 917 (7th Cir. 2002). "The test for materiality is whether, in the absence of the evidence, the petitioner received a fair trial resulting in a verdict . . . worthy of confidence." *Id.* But as Samanta's counsel acknowledged at trial, the missing portion of Neslund's account was consistent with the account contained in Officer Cepeda's report. *See* Resp't's Answer, Ex. D, F-176. Because of this duplication of information and Samanta's knowledge concerning the contents of the Neslund's report based on Officer Cepeda's report, there was no *Brady* violation.

Claims (a), (c), and (d) are procedurally defaulted because they were not subject to one full round of state court review. A claim is procedurally defaulted if a habeas petitioner failed to assert his federal claim at each level of state court review. *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004). That is, a petition for habeas relief must go through one complete round of state court review. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). In the Illinois court system, one complete round of review includes two tiers of appellate review, notwithstanding that the Illinois Supreme Court has discretionary control of its docket. *See id.* at 845 (noting that "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process" and that "a petition for discretionary review in Illinois' Supreme Court is a normal, simple, and established part of the State's appellate review process.").

Samanta did not raise ineffective assistance of counsel on direct appeal. Samanta did raise his ineffective assistance claims (a), (b), (c), and (d) in his post-conviction motion in the state trial court, but on appeal of his motion to the Illinois appellate court he only raised claim (b). *See* Resp't's Answer, Ex. H, Pet'r's Postconviction Appeal Opening Brief, *People v. Samanta*, No. 1-09-0589, 14. Consequently, Samanta cannot raise the claims that he abandoned on appeal to the Illinois appellate court.

Although Claim (b) went through one complete round of state court review, it also is procedurally defaulted because it was decided by the Illinois appellate court

on an independent and adequate state law ground. "[A] federal court may not review a claim which was presented to the state courts but which was rejected on an independent and adequate state ground." *Smith v. McKee*, 598 F.3d 374, 382 (7th Cir. 2010). "A state law ground that provides the basis for a state court decision is independent when the court actually relied on the procedural bar as an independent basis for its disposition of the case." *Id.* "A state law ground is adequate when it is a firmly established and regularly followed state practice at the time it is applied." *Id.*

Here, the Illinois appellate court rejected Samanta's ineffective assistance claim based on a failure to interview and call Samanta's brother as a witness under the doctrine of forfeiture. The Illinois appellate court found that the involvement of Samanta's brother was discernible at trial, could have been raised on direct appeal, but was not. *See* Resp't's Answer, Ex. G, 5 ("It is thus apparent that [Samanta's brother's] potential involvement was discernible from the record, and, as a result, the error now asserted is forfeited because it could have been, but was not, raised on direct appeal.") (citing *People w. Williams*, 807 N.E.2d 448 (Ill. 2004)). Because the Illinois appellate court concluded that forfeiture presented a procedural bar to his ineffective assistance of counsel claims, the claim was determined on an independent and adequate state law ground and is now procedurally defaulted for the purposes of this proceeding.

It is true that the Illinois appellate court conducted a merits discussion as well. But this does not remove the procedural bar in federal court. The Seventh

12

Circuit has rejected the argument that "the presence of any discussion of the merits indicates that the state court did not base its ruling on independent state law grounds." *Smith*, 598 F.3d at 386 (noting "that is not the law"). "Only when the state court's analysis of state law and federal law grounds are interwoven, to such an extent that we cannot clearly determine whether the state court opinion relies on state law grounds, do we set aside the state law grounds and address the issue." *Id.* Here, the Illinois appellate court began its merits analysis with the proviso, "even if we were to conclude that defendant's petition was not subject to these procedural bars," making it clear that forfeiture provided an independent and adequate ground for its decision. *See* Resp't's Answer, Ex. G, 5.

## Cause To Excuse Procedural Default

If a claim is procedurally defaulted, a petitioner may still pursue it if he can establish that: (1) good cause exists for the default and actual prejudice was suffered as a result or (2) the default would lead to a "fundamental miscarriage of justice." *Morales v. Johnson*, 659 F.3d 588, 604 (7th Cir. 2011); *see Bousley v. United States*, 523 U.S. 614, 620 (1998).[4]

---

[4] "[T]he assertion of ineffective assistance as a cause to excuse procedural default in a § 2254 petition, is, itself, a constitutional claim that must have been raised before the state court or be procedurally defaulted." *Lee v. Davis*, 328 F.3d 896, 901 (7th Cir. 2003). Thus, "a claim of attorney ineffectiveness which is defaulted in state court cannot be the basis for cause, unless the petitioner can establish cause and prejudice for the ineffectiveness claim as well." *Promotor v. Pollard*, 628 F.3d 878, 887 (7th Cir. 2010). "The result is a tangled web of defaults excused by causes that may themselves be defaulted and require a showing of cause and prejudice—a result that has an 'attractive power for those who like difficult puzzles.'" *Lee*, 328 F.3d at 901 (quoting *Edwards v. Carpenter*, 529 U.S. 446, 458 (2000)) (Breyer, J., concurring).

Samanta does not offer any good cause to excuse his procedural default. Instead, he argues that, if the Court does not address his procedurally defaulted claims, a fundamental miscarriage of justice would ensue. *See* Pet'r's Reply 21–22. "The fundamental miscarriage of justice exception requires the habeas petitioner to show that a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Smith*, 598 F.3d at 387 (internal quotations omitted). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Id.* at 387–88 (quoting *Schlup*, 513 U.S. at 327).

Samanta cites to *Murray v. Carrier*, 477 U.S. 478, 493 (1986), in which Justice O'Connor discusses the implications of adopting Justice Stevens' framework for the "cause and prejudice" test in his concurring opinion. The citation Samanta identifies from *Murray* does not appear to be on point. Moreover, Samanta provides no further argument and offers no new evidence. In short, Samanta has not shown that the constitutional violations he claims resulted in his conviction even though he was in fact innocent. Consequently, Samanta fails to provide adequate cause to excuse his procedural defaults.

## Certificate of Appealability

Under Rule 11 of the Rules Governing § 2254 Cases, this Court must consider whether it should issue a Certificate of Appealability when entering a final order adverse to a petitioner. Issuing a certificate is appropriate only if "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §

2253(c)(2). The standard for making a "substantial showing" is whether "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). If a court denies a petition on procedural grounds, a petitioner must show that both the procedural ruling and the underlying constitutional claim are debatable. *Id.* at 484.

Here, Claim One and Two are plainly not cognizable — these claims are Fourth Amendment evidentiary claims that Samanta fully briefed and argued in state court. Likewise, no reasonable jurist could find that Claim Three was fairly presented to the state courts where Samanta cited no federal cases or Illinois cases relying on federal cases, and did not argue the claim in due process terms but instead largely focused on appropriate sanctions under Illinois law. And it is beyond debate that the subclaims of Claim Four for ineffective assistance of counsel are all procedurally defaulted, either for failure to raise the subclaims through one full round of state review or because the subclaim was resolved on independent and adequate state grounds. Consequently, the Court declines to issue a Certificate of Appealability.

## **Conclusion**

For the reasons provided in this Memorandum Opinion and Order, the Court denies Samanta's petition for writ of habeas corpus [1] and declines to issue a Certificate of Appealability.  Civil case terminated.

**SO ORDERED**                    **ENTERED   9/29/15**

_____
**John Z. Lee**
**United States District Judge**